Page 1

AO 243 (Rev. 10/07)

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT**

**SENTENCE BY A PERSON IN FEDERAL CUSTODY**

23-50312

| **United States District Court** | District | |
|---|---|---|
| Name (under which you were convicted): Floyd E. Brown | | Docket or Case No.: 19 CR 50016 |
| Place of Confinement: USP McCreary P.O. Box 3000 Pine Knot, Ky 42635 | | Prisoner No.: 53900-424 |
| UNITED STATES OF AMERICA V. | | Movant (include name under which convicted) Floyd E Brown |

FILED

AUG 28 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**MOTION**

1. (a) Name and location of court which entered the judgment of conviction you are challenging: _____
   Stanley J. Roszkowski United States Courthouse
   Northern District of Illinois, Western Division
   327 S. Church Street Rockford, Il 61101 _____

   (b) Criminal docket or case number (if you know): 19 CR 50016

2. (a) Date of the judgment of conviction (if you know): 9-6-2022
   (b) Date of sentencing: 8-22-2022

3. Length of sentence: 55 years

4. Nature of crime (all counts): Count one 18 U.S.C. 111, Count Two 18 U.S.C. 1114, Count Three 18 U.S.C. 111(a)(1) and (b), Count Four 18 U.S.C. 111(a)(1) and (b), Count Five 18 U.S.C. 922(g), Count Six 18 U.S.C. 922(K), Count Seven 18 U.S.C. 924(j)(1) and Count Eight 18 U.S.C. 924(c)(1)(A)(1) and (iii)

_____

_____

5. (a) What was your plea? (Check one)
   (1) Not guilty  ☒          (2) Guilty  ☐          (3) Nolo contendere (no contest)  ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☒     Judge only ☐

Page 2

AO 243 (Rev. 10/07)

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☒          No ☐

8.  Did you appeal from the judgment of conviction?          Yes ☐          No ☒

9.  If you did appeal, answer the following:

(a) Name of court: _____

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐          No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes ☐     No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4)    Nature of the proceeding: _____

(5)    Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6)    Did you receive a hearing where evidence was given on your motion, petition, or application?

       Yes ☐       No ☐

(7)    Result: _____

(8)    Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1)    Name of court: _____

(2)    Docket of case number (if you know): _____

(3)    Date of filing (if you know): _____

(4)    Nature of the proceeding: _____

(5)    Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6)    Did you receive a hearing where evidence was given on your motion, petition, or application?

       Yes ☐       No ☐

(7)    Result: _____

(8)    Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)    First petition:        Yes ☐      No ☐

(2)    Second petition:    Yes ☐      No ☐

AO 243 (Rev. 10/07)

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

_____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** _____ See   Attachments _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

_____

AO 243 (Rev. 10/07)

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

   (3)   Did you receive a hearing on your motion, petition, or application?

         Yes ☐     No ☐

   (4)   Did you appeal from the denial of your motion, petition, or application?

         Yes ☐     No ☐

   (5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

         Yes ☐     No ☐

   (6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

   (7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND TWO:**   See Attachments _____

   (a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

AO 243 (Rev. 10/07)

(b) **Direct Appeal of Ground Two:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐     No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

          Yes ☐     No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3)  Did you receive a hearing on your motion, petition, or application?

          Yes ☐     No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

          Yes ☐     No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐     No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

AO 243 (Rev. 10/07)

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

_____

_____

**GROUND THREE:**   _____

_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Three:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐          No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

_____

_____

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:  _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know):  _____

Date of the court's decision:  _____

AO 243 (Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

AO 243 (Rev. 10/07)

(b) **Direct Appeal of Ground Four:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐      No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why:

_____

_____

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

            Yes ☐      No ☐

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3)  Did you receive a hearing on your motion, petition, or application?

            Yes ☐      No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

            Yes ☐      No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

            Yes ☐      No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

AO 243 (Rev. 10/07)

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

I have not presented ineffective assistance of Counsel for failing to move for suppression of evidence. I didn't present these claims because my lawyer told me I had to present them through a 2255 motion.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?     Yes ☐     No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:

(b) At the arraignment and plea:

(c) At the trial:

(d) At sentencing:

AO 243 (Rev. 10/07)

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☒          No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☐

AO 243 (Rev. 10/07)

18.    TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

   (1)   the date on which the judgment of conviction became final;

   (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

   (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 10/07)

Therefore, movant asks that the Court grant the following relief: Suppression of evidence recovered from Mr Brown hotel room and car or a new trial so that Mr. Brown can have an evidentiary hearing on his Fourth Amendment Claim of illegal search and seizure

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on     August 23, 2023     .
                                                                                        (month, date, year)

Executed (signed) on     8-22-2023     (date).

_____
Floyd Brown
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

_____
_____
_____

Attachments to Habeas Petition

I.   Grounds for Relief

A.   Ground one:

Mr. Brown was denied effective assistance of Counsel.

Supporting Facts:

Mr. Brown was charged with murder of a federal employee. In December of 2018 Bloomington Police Department ("BPD") was investigating a string of residential burglaries, and had identified Mr. Brown as their primary suspect.

In December of 2018 BPD Officer Detective Beirbaum submitted an application for a search warrant for a pen register and ping/trace order.

On December 23, 2018 BPD attempted to locate Mr. Brown in Bloomington via the ping order. Using a ping order they were able to locate Mr. Brown's car. Upon locating the car backed into a parking spot behind an apartment building, BPD officers decided to set up surveillance to arrest Mr. Brown as he approached his car. Sometime later Mr. Brown exited a culvert headed in the direction of his car. At this point the command was given to converge on the car. As BPD officers drove down the driveway, Mr. Brown entered his car as a BPD officer proceeded

14

to ram Mr. Brown's car with his SUV causing Mr. Brown to reverse over a parking block down an embankment towards the colvert and drive away. A few minutes later Mr. Brown was involved in a crash. When police arrived to the scene of the crash they were unable to locate Mr. Brown.

On or about December 26, 2018 warrants were issued for Mr. Brown's arrest. Mr. Brown whereabouts were unknown. Within about a week after the arrest warrants for Mr. Brown was issued, Task Force Officers ("TFOs") with the Great Lakes Regional Fugitive Task Force joined in the effort to locate and arrest Mr. Brown.

In January 2019 TFOs interviewed a former girlfriend of Mr. Brown who reported that she was no longer seeing Mr. Brown and that he had a new girlfriend that she identified as "Dri". She also identified a facebook profile being used by Dri. Subsequently TFOs identified "Dri" as Drianna Wright. Based on the interview of Mr. Brown's former girlfriend TFOs believed that Mr Brown and Ms. Wright were togeather.

On or about January 18, 2019 TFOs received information from Amtrak indicating that Ms. Wright had booked a bus trip from Rockford to Chicago, followed by a train trip from Chicago to Springfield on January 17, 2019 with a return trip booked for January 18, 2019, but that Ms.

15

Wright never showed up. Amtrak provided the email address and phone number used for the booking. The email address was Iamnotda10K@gmail.com and the phone number was 314-818-9123 (the "9123 phone").

On February 5, 2019 Detective Bierbaum submitted a complaint for a search warrant to obtain historical call, text, and data detail records and historical location information for the -9123 phone. A McLean County Circuit judge issued the warrant on February 5, 2019. Later that day Detective Bierbaum served the warrant on the service provider.

On March 1, 2019 Detective Bierbaum received documents from the service provider in responce to the warrant. The documents reflected the -9123 phone's use from approximately December 29, 2018 through February 4, 2019. Detective Bierbaum forwarded the records to TFO Rena, who was working on the investigation of Mr. Brown. Detective Bierbaum also forwarded the records to Jack McQueen, Supervisor of BPD Crime and Intelligence Analysis unit, who was working on analyzing phone records and other parts of the burglary investigation.

McQueen immediately began analyzing the information. In analyzing the historical cell site location information ("CSLI"), McQueen noticed that the -9123 phone had been using cell towers located on the east side of Rockford, and that the call

records showed that the -9123 phone had contacted a bus company, Amtrak and Multiple Rockford-area businesses. McQueen's analysis also showed that the -9123 phone had made two calls to the 800-number for the hotel brand Extended Stay America in January 2019. The phone records also showed that the -9123 phone was in contact with two phone numbers having a 217 area code, which covers parts of central Illinois. McQueen sent his analysis to Detective Bierbaum and TFO Tom Rena on March, 4 2019.

On March 4, 2019 TFO Rena submitted to a McLean County judge an application for a warrant authorizing the installation, use, and monitoring of a pen register and trap and trace device and the ~~....~~ obtaining of prospective location information for the -9123 phone. A McLean County Circuit judge issued the requested warrant on march 4, 2019. The warrant was served on the service provider on March 5, 2019 and TFOs began receiving real time location information and pen register and trap and trace data for the -9123 phone beginning around 7:00pm on March 5, 2019.

TFO Rena was communicating via email with BPD officers, Members of the United States Marshal Service ("USMS") as well as McHenry County Deputy Marshal ("MCDM") Michael Flannery.

17

In an email from TFO Rena sent to USMS Craig Kmett on March 5, 2019 at 9:28am TFO Rena ask "Can we go up on it?" (This was TFO Rena asking can they get an order to track the -9123 phone.)

On March 5, 2019 at 10:47am USMS Kmett emails USMS Frederick Freeman and says "let me know if they can get an order on her phone". (Kmett is asking about the -9123 phone).

On March 6, 2019 at 6:32am USMS Freeman emails USMS Kmett and Says "Verizon has gps now fyi. Hits are trash though in Rockford".

On March 6, 2019 at 8:45am USMS Kmett emails USMS Freeman and says "we have nothing right now in Rockford, Just have been told they both fled there" "so I assume no PEN with Verizon since they have gps now?"

On March 6, 2019 at 9:42am USMS Dominic DiLuigi sent USMS Brent Moran an email and says MCDM "Flannery will be handling".

On March 6, 2019 at 8:12pm USMS Phillip Leibas sent an email to MCDM Flannery and TFO Rena saying "Here are the records and mapshot for Brown in Rockford". (Mapshots are believed to be geofencing/geotracking)

On March 7, 2019 at 6:36am USMS Leibas sent an email to MCDM Flannery and TFO Rena saying "updated mapshots. I would check those hotels

where gps overlaps." (gps is believed to be geofencing / geotracking)

On March 7, 2019 at 6:43 am MCDM Flannery sent an email to USMS Leibus and TFO Rena asking if they had any objetions with him going to the Extended Stay hotel, he goes on to say that "where the 2 Geo Fence's intersect is where the Extended Stay Hotel is located

On the morning of March 7, 2019, after receiving the updated mapshots for the geofencing/geotracking MCDMs headed to Rockford. See ground two, below. The purpose of their trip to Rockford was to arrest Mr. Brown.

Upon arrival at the Extended Stay Hotel MCDM Daniel Kramer spoke with the hotel's manager at the front desk. MCDM Kramer showed three photos to the manager that depicted Ms. Wright, Mr. Brown and Mr. Brown's son. The manager recognized Ms. Wright as a guest staying in Room 305, and stated that Ms. Wright had come to the front desk a few minutes earlier to pay for an additional week. The hotel's maintenance man who joined the conversation also recognized Ms. Wright as a guest staying in Room 305. MCDM Kramer learned from the two hotel employees that Ms. Wright

19

had been staying at the hotel since December 2018, and that a male was staying with her. The maintenance man also described a vehicle belonging to Ms. Wright and the male, and identified where the vehicle typically was parked in the hotel's parking lot. MCDMs then took a picture of the car as it sat in the hotel's parking lot.

The maintenance man agreed to conduct a ruse visit to Room 305 to determine whether the male was in the room at the time. The manager provided MCDM with a master electronic key that could be used to unlock the hotel's guest rooms, and agreed that MCDM Kramer could use Room 304, a room across the hall from Ms. Wright's room.

The maintenance man knocked on the door to Room 305. Ms. Wright answered the door, and the maintenance man told her that there was a leak in the neighboring room and he wanted to check her kitchen area for a possible leak. Ms. Wright allowed the maintenance man inside the room, and he briefly checked the kitchen area. While the maintenance man was in the room, he observed that a male was laying on the bed. The maintenance man could not positively identify the male because the male had his arm over his face. However on his way back to the lobby area the maintenance

20

man sent a text to MCDM Kramer stating "Yes he is".

While maintaining visual surveillance of the hallway and the hotel's parking lot, the MCDMs prepared to enter Room 305 and arrest Mr. Brown. Three MCDMs approached the door to Room 305 with a battering ram; there was a normal knock at the door, Ms. Wright called out from the bathroom to the effect of yes or who is it. Immediately there was banging on the door and yelling, simultaneously the door was opened by MCDMs. The door didn't fully open because the swing lock was engaged. Once the door was open the MCDMs said "open the door or we're going to breach it", immediately after this was said MCDM Kramer chambered a round in his rifle. In response to a round being chambered by MCDM Kramer Mr. Brown began to yell don't do it, don't do it, don't do it. At that point shots were fired.

From the time MCDMs knocked on the door to Room 305 to the moment of shots being fired all happened in a matter of seconds. Immediately after the shooting Mr. Brown left the scene and was arrested hours later outside his car.

Had Mr. Brown's lawyer Mrs. Lisa Wood filed a motion to suppress for the warrantless geofencing/geotracking the court would have heard evidence through testimony

as well as viewed physical evidence that would have
supported the arguement that Mr. Brown was being
electronically track through his phone (the -9123 phone)
without a warrant and that there were gps coordinates
for Mr. Brown's phone that predated the March 4, 2019
warrant. See ground two, below. Furthermore had
the suppression motion been filed it would have
brought questions to TFO Rena's March 4, 2019
warrant namely as addressed above if TFO Rena
had already secured a warrant on March 4, 2019
then why in an email dated March 5, 2019 is
TFO Rena asking USMS Kinett "can we go up on it".


B.  Ground two:
    Failure to Move for suppression of Evidence

Supporting facts:
            As discussed above, members with the
USMS, TFO Rena and MCDM Flannery used geofencing /
geotracking without a warrant to obtain Mr. Brown's
location in order to effect an arrest.
            Mr. Brown was first made aware of the electronic
tracking by his lawyer Mr. John Beal within the first
month of his arrest. Mr. Brown immediately told his

22

lawyers Mr. Beal and Mrs Wood that he wanted to file a motion to suppress for illegal search and seize. The lawyers then went and filed discovery motions requesting all discovery material involving the electronic tracking of Mr. Brown. The requested material didn't come all at once, it was sporadically given to the defense.

As Mr. Brown received his copies of the discovery he would review the disk and report his findings to his lawyers. While reviewing the disk Mr. Brown took notes so that he could quick reference the information to his lawyers and they would know where to look to find what it was that he was talking about. Upon reviewing numerous disk Mr. Brown located geofencing/geotracking maps that bore Microsoft's Copyright. Furthermore Mr. Brown located a page that had gps coordinates for the 9123 phone that were dated and time stamped. The dated gps coordinates went back to March 1, 2019 which predated the March 4, 2019 warrant submitted by TFO Rena, also there are gps coordinates on that same page that lead up to March 1, 2019, however those gps coordinates had their date and time stamp removed and these coordinates are believed to extend to the latter part of February, which would also predate the March 4,

23

2019 Warrant.

Mr. Browns lawyers made the court aware that they were going to file a motion to suppress on fourth amendment grounds, so the court set dates in anticipation of the suppression motion being filed.

Mrs. Wood was task with filing the motion to suppress and was in accordance with Mr. Beal and Mr. Brown decision on proceeding with the suppression motion up until around May of 2021 when Mrs. Wood and Mr. Beal had an argument on the phone while they were on an attorney call with Mr. Brown.

Mr. Brown had asked Mrs Wood to request from the government certain material on how he was located. Mrs. Wood refused Mr. Browns request so Mr. Brown wrote the judge a letter asking for the same material and the judge ordered Mr. Browns lawyers and the government to furnish Mr. Brown with the material.

Not long after, Mr. Brown had an attorney call with Mrs wood where he started to discuss the suppression motion and Mrs. wood said that she wasn't going to file the motion. Mr. Brown reiterated that he wanted her to file the motion and that was the plan since the beginning. Mrs. Wood told Mr. Brown that if he didn't like or agree with how she was representing him that he could file a 2255. Mr. Brown told Mrs. Wood that he didn't

want to go through all that and that he wanted to take care of the suppression motion while he was already in front of the court. Mrs. Wood told Mr. Brown that he could either proceed with her course of action or just go to trial. Mr. Brown fearful of going to trial with nothing told her that she can proceed her way but told her one last time that he wanted the suppression motion filed.

After the phone call with Mrs. Wood Mr. Brown contacted Mr. Beal and told him about the phone call with Mrs. Wood. Mr. Beal told Mr. Brown that she was wrong for what she said and what she was doing. Mrs. Wood filed her motion and it was denied.

Mr. Brown wrote Mr. Beal and told him that he couldn't work with Mrs. Wood because of her actions and cited irreconcilable difference. Mr. Beal contacted Mrs. Wood and told her about the letter and that he was suppost to send it to the judge. So Mrs. Wood filed a motion to withdraw from Mr. Brown's case.

The judge set a court date to hear the motion to withdraw. At the hearing the judge gave Mrs. Wood and Mr. Brown an opportunity to speak. When the addressed Mr. Brown as to if he had anything to say, Mr. Brown told the court that Mrs. Wood refused to file his motion to suppress and that she said that if he didn't like it he could file a 2255. The judge

granted the motion to withdraw. The evidence used at trial to convict Mr. Brown was obtained as a direct result of the warrantless geofencing/geotracking "pinging" of Mr. Brown's cell phone.


## Legal Argument

A. MR. BROWN DID NOT RECEIVE EFFECT ASSISTANCE OF COUNSEL

1. Failure to Move for Suppression of Evidence

The Sixth Amendment of the U.S. Constitution guarantees the right to effective counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed 2d 674 (1984). A defendant is entitled to a new trial if he can show (1) that counsel's performance was defective; and (2) a reasonable probability that, but for the deficient performance, the outcome of the proceeding would have been different. A petitioner can meet this standard by showing that counsel failed to move for suppression of evidence. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375, 91 L. Ed. 2d 305 (1986). Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant

Must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

As discussed above, Mr. Brown had learned that he had been electronically track through his cell phone. Mr. Brown told his lawyers Mr. Beal and Mrs. Wood that he wanted to file a motion to suppress on Fourth Amendment grounds. Mr. Brown's lawyers requested discovery material pertaining to the electronic tracking of Mr. Brown. As Mr. Brown received the discovery material he would review it and report his findings to his lawyers. In reviewing the electronic tracking information Mr. Brown located geofencing/geotracking maps that coincided with law enforcements emails on March 6 and March 7, 2019. Mr. Brown also located gps coordinates that were dated March 1, 2019 and then there was coordinates befor the March 1 coordinates that had their date and time stamp removed. Furthermore Mr. Brown located two emails dated March 5, 2019. One stated "Can we go up on it" and the other email stated "Let me know if they can get Order on her phone". The two emails would lead a reasonable person to believe that there was No warrant for the- 9123 phone as of March 5, 2019.

27

Law enforcement obtained Mr. Brown's cell phone (the-9123 phone) location in violation of Mr. Brown's Fourth Amendment rights. In particular, law enforcement electronically tracked Mr. Brown's cell phone by using geofencing/geotracking without a warrant as well as some other form of electronic tracking to get the cell phone coordinates on March 1, 2019.

Law enforcement was lead to the Extended Stay Hotel by using warrantless geofencing/geotracking of Mr. Brown's cell phone, a process by which law enforcement initiates a signal through a cell phone to reveal a person's whereabouts. See id at 36. This electronic tracking otherwise known as "pinging" constitutes an unlawful search and seizure under the Fourth Amendment.[1] Because no exception to the Fourth Amendment applies to permit GPS tracking through "pinging", the Court should suppress all the evidence obtained through the government's unconstitutional actions, including evidence obtained through the March 7, 2019 search warrants as fruit of the poisonous tree.

---

[1] * "Pinging" is a mechanism by which law enforcement can obtain GPS location of a cell phone. Whether it is traditional "pinging", or a search, for instance, through the Stingray technology, "pinging" is sufficiently intrusive to implicate the Fourth Amendment.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" U.S. Const. Amend. IV. The Fourth Amendment commands that searches and seizures be reasonable. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985). "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself" Id. (internal quotations marks and citations omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley v. California, 134 S. Ct. 2473, 2482 (2014).

Traditionally, the Fourth Amendment was "tied to common-law trespass" and focused on whether the government "obtains information by physically intruding on a constitutionally protected area." United States v. Jones, 565 U.S. 400, 405-06 (2012). More recently, the Supreme Court has expanded the reach of Fourth Amendment, recognizing that "property rights are not the sole measure of Fourth Amendment violations." Soldal v. Cook County, 506 U.S. 56, 64 (1992). "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' the court has held that official intrusion into that private sphere generally qualifies as a search

and requires a warrant supported by probable cause".
Carpenter v. United States, 138 S. Ct. 2206, 2213 (2018)
(quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)).

As relevant here, the Supreme Court has address the
extension of the traditional Fourth Amendment Search
and Seizure doctrine to electronic surveillance and
Cell phones.

Beginning with Katz v. United States, 389 U.S. 347 (1967),
that case involved government agents placing an electronic
listening and recording device on the outside of a public
telephone booth from when the defendant made his calls.
Id. at 348. The Court explained that, "the reach of that
Amendment cannot turn upon the presence or absence of
a physical intrusion into any given enclosure". Id. at 353.
Even though visible to the "intruding eye", the defendant, after
paying the toll, had the right to exclude the "uninvited
ear" from his phone call. Id. at 511. Thus, the Court
explained, the test for whether "a person has a constitutionally
protected reasonable expectation of privacy" became "first
that a person have exhibited an actual (subjective) expectation
of privacy and, second, that the expectation be one that
society is prepared to recognize as reasonable". Id. at 361
(Harlan, J., concurring).

The Court returned in Jones, addressing electronic
surveillance through GPS tracking. See 565 U.S. at 405.

30

Jones involved the secret placement of a tracking device on the defendants car for 28-days, and the Court explicitly relied on the trespasser nature of the police action in concluding that tracking constituted a search. See id. The Court stated that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'," reasoning that the "Government physically occupied private property for the purpose of obtaining information." Id.

The Supreme Court's most recent, and comprehensive decisions addressing the intersection of the Fourth Amendment, and electronic surveillance and cell phones are in <u>Riley v.</u> <u>California</u>, and <u>Carpenter v. United States</u>, 138 S. Ct. 2206, 2220-21 (2018).

In Riley, the Court addressed whether the search incident to arrest exception to the Fourth Amendment's warrant requirement applies to a search of a cell phone. Riley explained:

Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do befor searching a cell phone seized incident to an arrest is accordingly simple—

31

get a warrant. Id. at 2494-95 (internal citations and quotation marks omitted).

Central to Riley's analysis is its recognition that cell phone data " differs in both a quantitative and a qualitative sense" from other physical items, and that when it comes to cell phones "the possible intrusion on privacy is not physically limited in the same way." Id. at 2489. Riley thus made clear that a search of a cell phone "would typically expose to the government far more than the most exhaustive search of a house," which had traditionally received the highest level of Fourth Amendment protection. Id. at 2491 ( emphasis in original). Moreover, Riley recognized cell phones are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." Riley 134 S. Ct. 2473, 2484 (2014).

A few years after Riley, the Court in Carpenter considered "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." Carpenter, 138 S. Ct. at 2211. Building upon its analysis in Riley, the Carpenter Court held that the acquisition of cell-site records is a search under the Fourth Amendment, and that the government must generally obtain a warrant supported by probable cause before acquiring cell-site records. Id. at 2220-21.

32

The Court explained that although wireless carriers generate historical cell-site records for commercial purposes, that fact does not negate a person's reasonable expectation of privacy in his physical location. See id. at 2217. Because a cell phone is almost a 'feature of human anatomy,' and thus track a person's movements 24/7, Carpenter determined that the "historical cell-site records present even greater privacy concerns then the GPS monitoring of a vehicle we considered in Jones." Id. at 2218 (quoting Riley, 134 S. Ct. 2484). Carpenter explains:

> While individuals regularly leave their vehicles, they compulsively carry cell phones with them at all times. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctors offices, political headquarters, and other potentially revealing locales. Accordingly, when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user.

A warrantless, GPS "pinging" of a cell phone is both an unreasonable search and seizure under the Fourth Amendment.

Following the reasoning of Katz, Jones, Riley and Carpenter, the Court should conclude that the governments warrantless GPS tracking of Mr. Browns cell phone, by

33

"pinging" his cell phone, constitutes both a search and seizure under the Fourth Amendment. Moreover, the Court should conclude that the government must obtain a warrant to obtain GPS data on a person's cell phone.

First it is plain that an individual ~~made~~ maintains both a subjective and objective expectation of privacy in the location data on his cell phone. Jones makes clear that the government conducts a search when they track a person's movements through electronic surveillance, precisely what "pinging" a cell phone entails. Further, Riley establishes that a person maintains a privacy interest in the data on his cell phone, which here includes GPS location obtained through "pinging". Indeed, Riley tells us the search of a cell phone "would typically expose to the government far more than the most exhaustive search of a house," and thus a search of a cell phone amounts to a home. Id. at 2491 (emphasis in original). Thus in modern society, the Supreme Court understands that cell phones are afforded the same, if not more protection, than a home. Finally Carpenter provides that a person has a strong privacy interest in preventing the government from tracking his GPS location through his cell phone.

Just as searches "inside a home without a warrant are presumptively unreasonable," so too are searches for data on a cell phone, including "pinging" searches within

34

a cell phone to reveal GPS location.

United States v. Karo, 468 U.S. 705, 715 (1984) (holding government monitoring of a tracking device placed in a shipment of chemicals taken home by a suspected drug dealer was a search where the agents tracked the device to locate the chemicals, on several occasions, within the defendant's house and various other private residences). Taking together the logic of Jones, Riley and Carpenter, the court should conclude that "pinging" Mr. Brown's cell phone here is as if law enforcement entered in to Mr. Brown's home, without a warrant, and placed a tracking device on an individual.[2]

Significantly, the privacy interest in GPS data through "pinging" implicates an even greater privacy interest than the privacy interests at issue in Jones and Carpenter. Unlike the historical cell-site records at issue in Carpenter, a cell phone user does not voluntarily

---

[2] To be sure, Mr. Brown's claim here is distinct from alleging that law enforcement unconstitutionally tracked his movements in public. The specific claim here is that law enforcement tracked Mr. Brown's cell phone, and his privacy and property interest is in the data on his cell phone.

convey GPS data through "pinging." Instead, pinging" occurs pursuant to a special, surreptitious procedure not available to the general public, initiated solely by law enforcement, without notice or any volitional activity by Defendant other than having his phone in the 'on mode.'" United States v. Abarca, 2014 WL 12641951, at *12 (N.D. Fla. Nov. 20, 2014)(quoting United States v. Caraballo, 963 F. Supp. 2d 341, 360 (D. Vt. 2013)). Thus, tracking Mr. Brown's GPS location by pinging his cell phone is an intrusive search, subject to protection under the Fourth Amendment.

"Pinging" Mr. Brown's cell phone to reveal his GPS location can also be viewed as an unlawful seizure under the Fourth Amendment.

The Supreme Court has said that a seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 ▬▬▬. (1984).

Here, rather than obtaining historical cell-site location to identify Mr. Brown's location through a third party, as in Carpenter, law enforcement commandeered Mr. Brown's cell phone to reveal his GPS location. The technology that enables law enforcement to "ping" a cell phone is like electronic trespassing.

36

Law enforcement thus converted Mr. Brown's cell phone into a tracking device, much like the tracking device at issue in Jones, by trespassing onto his cell phone. The government did so without Mr. Brown's knowledge or consent. In essence, law enforcement entered Mr. Brown's hotel room and into his cell phone, high jacked his cell phone to plant a tracking device, and then activated that tracking device to reveal Mr. Brown's GPS location. This intrusion onto Mr. Brown's property constitutes a meaningful interference with his property interest in his cell phone and is therefore an unreasonable seizure.

No warrant authorized law enforcement to use geofencing/geotracking to ping Mr. Brown's cell phone to reveal his location. As a result, law enforcement obtained Mr. Brown's GPS location as early as March 1, 2019 in violation of his Fourth Amendment rights, and all the evidence obtained as result of that illegal search and seizure, including evidence obtained through the search warrants for Mr. Brown's hotel room and car is fruit of the poisonous tree, and should be suppressed.

By Mrs. Wood failing to move for suppression of evidence, she deprived Mr. Brown of effective counsel and caused prejudice to Mr. Brown by depriving him of a fair trial.

37

Conclusion.

The Court should grant the Writ of habeas corpus.

Dated this 22 day of August . 2023

Respectfully submitted:

_Floyd Brown_
Floyd Brown

# CERTIFICATE OF SERVICE

I certify that I served today by U.S. mail copies of the accompanying habeas petition, attachments, geofencing / geotracking maps and emails between the U.S. Marshals, on the following:

Clerk of the United States District Court
Northern District of Illinois, Western Division
327 S. Church Street
Rockford, Il 61101

8 - 23 - 2023
Date

Floyd Brown
Signature: Floyd Brown

Floyd Brown
53900424
United States Penitentiary McCreary
P.O. Box 3000
Pine Knot, KY 42635

39